# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40141

United States Court of Appeals
Fifth Circuit
**FILED**
February 14, 2014
Lyle W. Cayce
Clerk

ERNESTO GARCIA,

          Plaintiff - Appellant

v.

JOHN KERRY, In his Official Capacity as Secretary of State of the United States,

          Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:10-CV-101

Before JONES, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

    Ernesto Garcia ("Garcia") appeals the district court's final judgment in favor of the United States Secretary of State (the "Secretary"), declaring that Garcia is not a United States citizen by birth and that the Secretary did not err in refusing to issue a United States passport to Garcia. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40141

## I. Background

In June 2009, Garcia submitted an application for a United States passport to the United States Department of State ("DOS"). In support of that application, Garcia filed a birth certificate (the "Texas Birth Certificate") issued by the registrar of the Texas Department of State Health Services' Bureau of Vital Statistics (the "Bureau of Vital Statistics") in Laredo, Texas. The Texas Birth Certificate, which was signed by a birth attendant named Emma Lopez ("Lopez") and recorded on July 29, 1975, indicated that Garcia was born on July 26, 1975, in Laredo, Texas. In July 2010, DOS sent a letter to Garcia regarding his United States passport application in which it requested additional information on the factual circumstances of his birth because the Texas Birth Certificate was filed "by a birth attendant who is suspected of submitting false birth records."[1] Garcia claims that he never received this letter and did not respond to this request.

Two months later, Garcia filed the instant action, seeking a declaratory judgment pursuant to 8 U.S.C. § 1503(a) that he is a United States citizen by birth. Thereafter, DOS denied Garcia's application for a United States passport, writing that Garcia had not established by a preponderance of the evidence that he was born in the United States.[2] As evidence thereof, the letter

---

[1] In 1980, Lopez pleaded guilty to falsifying a birth record, in violation of 18 U.S.C. § 1425.

[2] Prior to the denial of his application for a United States passport, Garcia requested and obtained a SENTRI card, which is used to expedite travel for approved individuals across the border between the United States and Mexico, from United States Customs and Border Protection. Garcia's SENTRI application contained a copy of the Texas Birth Certificate and his SENTRI card states he is a United States citizen. At oral argument, Garcia suggested that the SENTRI card proves that the United States has taken inconsistent positions on the issue of Garcia's citizenship. Although he mentioned the SENTRI card in passing in his brief, he did not raise this inconsistency as an issue in his opening brief, and we will therefore not consider it. *See United States v. Delgado*, 672 F.3d 320, 334 (5th Cir. 2012) ("[T]he general rule [is] that arguments not raised on appeal are forfeited.").

of denial cited the existence of a "foreign birth record indicating that [Garcia's] birth was registered on October 16, 1974, in Nuevo Laredo, Tamaulipas, Mexico, as having occurred on September 11, 1974 in Nuevo Laredo, Tamaulipas, Mexico" (the "Mexican Birth Certificate"), more than ten months before the date of birth listed on the Texas Birth Certificate. The letter of denial stated that Garcia's "birth record was filed by a birth attendant who [DOS] has reason to believe may not be reliable" and also noted that Garcia had failed to provide supplementary documentation of his claim of birth in the United States as earlier requested.

On December 10, 2012, the district court held a one-day bench trial. At trial, Garcia submitted various types of evidence to establish his claim that he was a United States citizen by birth. In addition to his own testimony, Garcia offered the testimony of his mother, who testified that she gave birth to Garcia on July 26, 1975, in Lopez's home in Laredo, Texas.[3] Garcia also offered the testimony of his father, who testified that the Mexican Birth Certificate was false and that he had illicitly procured it so that he could transfer title of his real property in Mexico to Garcia and his other children. In addition, Garcia submitted a copy of a default judgment that he had obtained in Mexico in 2002 (the "Mexican Default Judgment"), canceling the Mexican Birth Certificate. Garcia further submitted the testimony of an expert witness, Guillermo Alarcon ("Alarcon"). Alarcon attested to the validity of the Mexican Default Judgment and further explained that false Mexican birth certificates were commonly procured in the 1970s by Mexican parents for their children born

---

[3] Garcia's mother, a citizen of Mexico, testified that, while nine months pregnant, she traveled to Laredo, Texas, with a friend to shop for baby clothes. She further testified that, during this trip, she suddenly went into labor; her friend, who had used Lopez as a birth attendant in the past, brought Garcia's mother to Lopez's house, where she gave birth to Garcia.

abroad, due to certain property ownership restrictions placed on dual citizens at the time. Finally, Garcia submitted a certified copy of his file maintained by the Bureau of Vital Statistics. That file indicated that Garcia requested a certified copy of the Texas Birth Certificate in 2008, and the Bureau of Vital Statistics originally denied that request due to the existence of the Mexican Birth Certificate. Following this denial, Garcia requested an evidentiary hearing, and the hearing examiner, after reviewing the evidence submitted by Garcia, ordered the Texas Department of State Health Services to issue Garcia a certified copy of the Texas Birth Certificate (the "Texas Order"), finding that Garcia had shown by a preponderance of the evidence that he was born in Laredo, Texas on July 26, 1975.

On December 12, 2012, the district court entered a memorandum opinion and order, in which it concluded that Garcia had not proven by a preponderance of the evidence that he was a United States citizen by birth and therefore denied the requested declaratory relief. Garcia timely appealed.

## II.  Standard of Review

In an appeal from a judgment following a bench trial, we review findings of fact for clear error and legal issues de novo. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000). We review evidentiary rulings "only for abuse of discretion and will reverse a judgment on the basis of evidentiary rulings only where the challenged ruling affects a substantial right of a party." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1138–39 (5th Cir. 1991) (internal citation and quotation marks omitted).

## III.  Discussion

Pursuant to 8 U.S.C. § 1503:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United

> States, such person may institute an action . . . against the head of such department or independent agency for a judgment declaring him to be a national of the United States.

8 U.S.C. § 1503(a). At the bench trial, Garcia bore the burden of proving, by a preponderance of the evidence, that he is an American citizen by birth. *See De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958).

Garcia argues that the district court erred for three reasons: (1) the district court failed to give preclusive effect to the Texas Order or the Mexican Default Judgment; (2) the district court ignored the testimony of Alarcon; and (3) the district court improperly considered Lopez's conviction for falsifying a birth record, which occurred several years after Garcia's birth.

Garcia asserts that the district court erred in not according full faith and credit under the Full Faith and Credit Act to the finding in the Texas Order that Garcia was born in Laredo, Texas. *See* 28 U.S.C. § 1738. We disagree. The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 132 S. Ct. 2492, 2498 (2012); *see also Toll v. Moreno*, 458 U.S. 1, 10 (1982); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.") (internal quotations and citation omitted). This authority is derived, in part, from the federal government's power to "establish an uniform Rule of Naturalization," U.S. Const., Art. I, § 8, cl. 4, as well as its inherent power over foreign affairs, *see Arizona*, 132 S. Ct. at 2498. "Power to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica*, 424 U.S. 351, 354 (1976); *see also Truax v. Raich*, 239 U.S. 33, 42 (1915). Individual states "enjoy no power with respect to the classification of aliens." *Plyler v. Doe*, 457 U.S. 202, 225 (1982).

Here, the district court's refusal to credit the findings contained in the Texas Order does not implicate the Full Faith and Credit Act. *See Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 400 (5th Cir. 2006). Garcia's citizenship status "is determined by federal law; it is *not* dependent on the law of any particular state." *Id.* (emphasis in original). Even if the Texas Department of State Health Services did determine that Garcia was born in Laredo, Texas, neither DOS nor the district court is bound by that decision in determining whether Garcia is entitled to a United States passport. *See id.* The Full Faith and Credit Act does not require the district court "to accord [the Texas Order] conclusive effect" in United States passport proceedings. *Id.* As such, we conclude that the district court did not err.

Similarly, the district court did not err in refusing to give preclusive effect under the principles of comity to the Mexican Default Judgment. Under the principles of comity, a foreign court's judgment on a matter is conclusive in a federal court when, inter alia, the relevant parties had an opportunity to be heard. *See Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003). Here, the district court did not err in declining to give preclusive effect under the principles of comity to the Mexican Default Judgment.

First, Garcia offered no evidence that the Secretary had notice and an "opportunity to be heard" in the Mexican proceeding to cancel the Mexican Birth Certificate. *Int'l Transactions*, 347 F.3d at 596 ("[T]he [defendants] did not meet their burden of proof on the defense of comity, because they did not demonstrate that [the plaintiff] was afforded notice and an opportunity to be heard" in the Mexican bankruptcy proceeding.). Second, giving preclusive effect to the Mexican Default Judgment here would be "contrary or prejudicial to the interest" of the United States. *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990). The Secretary and his designates have

the sole power to grant, issue, and verify United States passports. *See* 22 U.S.C. § 211a. Permitting a foreign judgment to preclude the Secretary from determining Garcia's eligibility for a United States passport would clearly be contrary or prejudicial to the interests of the federal government in maintaining its exclusive authority over the regulation of immigration. *See De Canas*, 424 U.S. at 354. Accordingly, the district court did not err in declining to give preclusive effect under the principles of comity to the Mexican Default Judgment.

Garcia further argues that the district court committed clear error by ignoring the testimony of Alarcon, Garcia's expert witness, in its factual findings. However, "[i]t is settled law that the weight to be accorded expert opinion evidence is solely within the discretion of the judge sitting without a jury." *Pittman v. Gilmore*, 556 F.2d 1259, 1261 (5th Cir. 1977). In a bench trial, the district court is not obligated to accept or credit expert witness testimony. *See Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 894 (5th Cir. 1991).

Finally, Garcia asserts that the district court erred in considering Lopez's conviction for falsifying a birth record, which occurred five years after Garcia's birth. *See United States v. Lopez*, 704 F.2d 1382, 1383–84 (5th Cir. 1983). Lopez's conviction for violating 18 U.S.C. § 1425 was a matter of public record. In fact, the parties referred to our decision in *Lopez* affirming her conviction in their joint pretrial report submitted to the district court. It was therefore a proper subject for judicial notice by the district court. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005); *NCNB Tex. Nat. Bank v. Johnson*, 11 F.3d 1260, 1263 n.2 (5th Cir. 1994); FED. R. EVID. 201(b).

Garcia contends that Lopez's conviction does not prove that she lied about Garcia's birth and, therefore, the district court erred in relying on it. In context, however, the district court addressed Lopez's conviction when

assessing the credibility of Garcia's mother's story. *See Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000). It concluded that she was not credible because her story rested on a series of unlikely coincidences: she happened to travel on the day she went into labor to Laredo, Texas; she happened to be traveling with a friend who happened to know a birth attendant in Laredo; and that birth attendant happened to later plead guilty to fraudulently registering a birth in the United States. Moreover, the district court also found the testimony of Garcia's mother to be incredible because it was inconsistent with her deposition testimony.

The district court also questioned the credibility of both Garcia and Garcia's father and discounted their explanation for the Mexican Birth Certificate, citing conflicts and inconsistencies in their testimony. The district court also noted that the birthdate on the Mexican Birth Certificate preceded the date on the Texas Birth Certificate by ten months, which suggested that the Texas Birth Certificate was created later on, after Garcia was actually born in Mexico.

Finally, we note that "[a] trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence. In a bench trial, reversal is only warranted if all of the competent evidence is insufficient to support the judgment, or if it affirmatively appears that the incompetent evidence induced the court to make an essential finding which it otherwise would not have made." *Southern Pac. Transp. Co. v. Chabert*, 973 F.2d 441, 448 (5th Cir. 1992) (internal citations omitted). Upon review of the entire record it does not appear that Lopez's conviction induced the district court to make an essential finding that it otherwise would not have made. *Id.* In sum, the district court discredited the testimony of Garcia and his fact witnesses and, on that basis, determined that Garcia had not met his burden to show by a preponderance of the evidence that he was a United States citizen by birth.

No. 13-40141

This credibility assessment rested on several grounds independent of Lopez's conviction, which provided ample basis for its factual findings. We must defer to its credibility evaluations. *See Canal Barge*, 220 F.3d at 375; FED. R. CIV. P. 52(a)(6). Thus, even assuming *arguendo* that the district court did err in considering Lopez's conviction for the purpose of determining that the birth certificate was fraudulent, the error was harmless. *See Abner v. Kansas City S. R. Co.*, 513 F.3d 154, 168 (5th Cir. 2008); FED. R. CIV. P. 61.

    AFFIRMED.